STATE of South Dakota, Plaintiff and Appellant,

v.

**William GROOMS, Gilbert Roberts, Lester Waters, and Greg Barber, Defendants and Appellees.**

No. 18078.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1993.

Decided Aug. 4, 1993.

Mark Barnett, Atty. Gen., Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Robert Van Norman, Rapid City, for defendant and appellee William Grooms.

Randal E. Connelly, Rapid City, for defendant and appellee Gilbert Roberts.

Bruce A. Hubbard of Hansen and Hubbard, Sturgis, for defendant and appellee Lester Waters.

Kenneth E. Jasper, Rapid City, for defendant and appellee Greg Barber.

SABERS, Justice.

Trial court ordered State to disclose residential and business addresses of witness. State appeals, alleging release of the information will endanger the personal safety of the witness. We affirm.

FACTS

In 1985, William Grooms (Grooms) was charged with two separate counts of Grand Theft by Disposal of Stolen Property in Meade County. Lona Peterson (Peterson), Grooms' wife at the time, testified on his behalf at his trial. He was acquitted of the charges on August 27, 1987.

In December, 1988, Peterson and Grooms were divorced. Custody of their only child was awarded to Peterson and Grooms was granted visitation rights. Peterson continued to visit and correspond with Grooms until approximately June, 1989, when she

began dating Tim James (James). At that time, Peterson tried to convince Grooms to voluntarily terminate his parental rights to their daughter. She was unsuccessful.[1]

In the fall of 1989, Peterson filed a Dependency and Neglect Petition to terminate Grooms' parental rights, alleging Grooms was an unfit father. To support her petition, Peterson reported to the Meade County authorities that Grooms' defense against the charges filed against him in 1985 was fabricated and that she had perjured herself to assist in his acquittal. Peterson was granted use immunity for testimony at the Dependency and Neglect Hearing.[2] Her petition was denied in May, 1990.

As a result of Peterson's report, four people who had testified on Grooms' behalf were indicted. Grooms was indicted on six counts of Perjury, five counts of Subornation of Perjury, and one count of Attempted Subornation of Perjury. Gilbert Roberts was indicted on six counts of Perjury. Lester Waters was indicted on seven counts of Perjury, and Greg Barber was indicted on one count of Perjury.

Peterson refused to disclose to Grooms, or anyone representing him, where she and the child are living allegedly out of fear for their safety. Grooms, Roberts, Waters, and Barber filed verified motions for the taking of Peterson's deposition. The State stipulated to the deposition, subpoenaed Peterson, and transported her to South Dakota so that her deposition could be taken. The State objected to any questions regarding her location at the deposition.[3]

At a general motions hearing on July 23, 1992, the trial court ruled that Peterson's residential and business addresses must be disclosed so that the Defendants could interview potential character witnesses and effectively prepare their defense. The State filed a Motion to Reconsider. Based upon the applicable Grand Jury Proceedings, the deposition of Peterson, and the transcript of the testimony at the trial of Grooms in Meade County, the trial court issued a letter opinion and entered Findings of Fact and Conclusions of Law reaffirming its ruling granting Defendants' motion. On September 16, 1992, the trial court entered an order requiring the State to release the residential and business addresses of Peterson, as well as the name of her employer. State appeals.

## DECISION

We must determine whether the trial court abused its discretion when it ordered the State to disclose the residential and business addresses of Peterson and the name of her employer. "Ordinarily one has the right to cross-examine a witness concerning his address, occupation, and other routine matters. However, that right is not absolute and may be restricted to protect a witness from embarrassment, harassment, or threats to his safety." *State v. Sheffey*, 250 N.W.2d 51, 55 (Iowa 1977) (citing *Alford v. United States*, 282 U.S. 687, 690–94, 51 S.Ct. 218, 218–220, 75 L.Ed. 624, 627–29 (1931); *Smith v. Illinois*, 390 U.S. 129, 131–34, 88 S.Ct. 748, 749–51, 19 L.Ed.2d 956, 959–60 (1968)).

In *Sheffey*, the defendant appealed the trial court's refusal to permit cross-examination of a prosecution witness concerning his address at the time of trial. According to the State's motion in limine, the witness' life had been threatened and therefore, the probative value of cross-examination regarding his address was slight compared with the danger to the witness. In affirming the trial court, the court stated that while the right to confront a witness includes the right to cross-examine a witness, the extent and scope of cross-examination lie largely within the sound discretion of the trial court. *Sheffey*, 250

---

1. According to Peterson, if the termination had been successful, James planned to adopt her daughter. Peterson and James were married in the fall of 1989, but divorced in June, 1990.

2. It appears that Peterson has been granted use immunity for any testimony which she might give in connection with this matter. Peterson claims that if she is ordered to disclose her location, she is not obligated to testify under her agreement with the State.

3. At her deposition, Peterson refused to answer any questions regarding her location since June of 1990 pursuant to her agreement with the State.

N.W.2d at 54–55 (citations omitted). *See also Smith*, 390 U.S. at 134, 88 S.Ct. at 751, 19 L.Ed.2d at 960 (White, J., concurring). We will not reverse the trial court absent an abuse of that discretion.[4] *Alford*, 282 U.S. at 694, 51 S.Ct. at 220, 75 L.Ed. at 629; *See also Sheffey*, 250 N.W.2d at 55.

In *Alford v. United States*, the Supreme Court stated that one of the purposes of cross-examining a witness as to his place of residence is to identify the witness with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood. 282 U.S. at 691, 51 S.Ct. at 219, 75 L.Ed. at 627 (citations omitted). The Supreme Court further noted in *Smith* that:

> *when the credibility of a witness is in issue*, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

390 U.S. at 131, 88 S.Ct. at 750, 19 L.Ed.2d at 959 (emphasis added) (citation omitted). "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." *Alford*, 282 U.S. at 692, 51 S.Ct. at 219, 75 L.Ed. at 628 (citations omitted). (The *Alford* Court also noted that "[t]o say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." *Id.* (citations omitted).)

The Supreme Court has recognized two exceptions to the *Smith–Alford* standard

when (1) the questions tend merely to harass, annoy, or humiliate the witness or (2) the inquiries would tend to endanger the personal safety of the witness. *Michigan v. Paduchoski*, 50 Mich.App. 434, 213 N.W.2d 602, 604 (1974) (citations omitted).

In *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling

*Smith*, 390 U.S. at 133–34, 88 S.Ct. at 751, 19 L.Ed.2d at 960 (White, J., concurring).

■ As in *Alford*, Peterson will be testifying to "uncorroborated conversations of the defendant of a damaging character." *Alford*, 282 U.S. at 692, 51 S.Ct. at 220, 75 L.Ed. at 628. Questions regarding her personal and business addresses are appropriate questions which must be answered because this is "an essential step in identifying [Peterson] with [her] environment, to which cross-examination may always be directed." *Id.* (citations omitted).

Peterson admitted at her deposition that she had not suffered any physical assault, nor had she been threatened, as a result of her statements to the authorities over the years. In fact, Peterson may be attempting to accomplish through this proceeding exactly what the court denied her in the

---

4. [A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision. *State v. Pfaff*, 456 N.W.2d 558, 561 (S.D.1990) (citation omitted).

Dependency and Neglect Hearing, i.e., termination of Grooms' parental rights.

While in the past Peterson depicted Grooms as the victim, today she wants the court to believe that she is the victim, living in continual fear of an abusive man. As the Dependency and Neglect Memorandum Opinion states, however, Peterson (1) visited Grooms every visiting day; (2) drove by the Penitentiary with the child and waved at Grooms; (3) called Grooms and wrote him love letters and cards on behalf of herself and the child indicating their love and concern for Grooms *both before and after the divorce;* (4) vigorously pursued a habeas corpus proceeding on behalf of Grooms, and (5) assisted Grooms in attempting to gain custody of his sons from a prior marriage. According to the Dependency and Neglect Court, these actions were voluntary acts and Peterson's attitude toward Grooms did not change drastically until she became involved with James. Peterson's desire to be "rid" of Grooms [5] is not sufficient reason to deny Defendants their right to cross-examine Peterson.

Peterson's motivation and credibility, whether good or bad, are matters to be judged by the trial court, not this court. Clearly, "a judicial mind, considering the law and the facts, could have reached a similar decision." *Pfaff,* 456 N.W.2d at 561 (citation omitted). The State has failed to demonstrate that the trial court abused its discretion in granting the Defendants' motion. Therefore, we affirm.

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.

---

5. When asked at her deposition why she did not want to disclose her whereabouts, Peterson replied that she did not want to see Grooms again. She further stated that she did not want him to influence her life, or the life of her child.