2001 SD 96

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kim PEROVICH, Defendant and Appellant.**

No. 21509.

Supreme Court of South Dakota.

Considered on Briefs on April 24, 2001.

Decided July 25, 2001.

Mark Barnett, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, for plaintiff and appellee.

Paula D. Camp, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

SABERS, Justice

[¶ 1.] Kim Perovich was convicted and sentenced to ten terms of life imprisonment. We affirm five of the convictions, reverse five duplicate convictions and remand for resentencing.

### FACTS

[¶ 2.] Perovich was engaged to marry Donna Robinson. Donna had two nieces; K.R., age nine and R.R., age six. Perovich had been a family friend during his childhood and was re-introduced to Donna through her sister Tammy Robinson, the mother of K.R. and R.R. Tammy and her two children, K.R. and R.R., began to reside with Donna after frozen pipes forced the family to move from their previous home. Perovich visited the home frequently and would stay overnight on occasion.

[¶ 3.] There was no indication of unusual behavior or characteristics of abuse demonstrated by the two girls. The children did not shy away from Perovich or avoid him and no one observed anything unusual. Then, in the early morning hours of August 22, 1999, Donna, Perovich, and the girls went with Tammy to deliver copies of the *Rapid City Journal* to her vendors. Donna drove the van, Perovich, K.R., R.R. and Tammy were passengers. Tammy testified that toward the end of the route she saw Perovich move toward the back of the van with K.R. She testified that at first the two were horseplaying, then it became quiet for ten to fifteen minutes. When she looked back to see what was occurring, she saw K.R. and Perovich under a blanket. She observed an "up and down" motion around K.R.'s midsection. Tammy then dropped a paper and asked K.R. to retrieve it. The group finished the route. Tammy, her husband David, K.R. and R.R. went to a local store to purchase breakfast and shopped for about twenty minutes. No one discussed the incident.

[¶ 4.] They went to Donna's for breakfast. Tammy testified that she asked K.R. if someone touched her "down there." K.R. answered "just [Perovich], mommy." Tammy confronted Perovich and Donna. During this confrontation, R.R. also claimed Perovich had touched her. Tammy took K.R. and R.R. to the hospital at Donna's request.

[¶ 5.] The girls were examined at the hospital by Dr. Daniel Hoffman. The doctor elected to only do an external examination, as he was under the mistaken impression the abuse had taken place three to five days earlier. The doctor found no signs of trauma to the genital area of either girl. Dr. Hoffman explained at trial that these findings were not surprising and with digital penetration "we would not typically find anything." He agreed that the lack of such a finding could be consistent with the claims by the victims.

[¶ 6.] While at the Hospital K.R. and R.R. were visited by the sexual assault response team. Officer Kline of the Rapid City police department interviewed the

two girls separately. These interviews were also attended by Nurse Shaye Krcil. During her interview, K.R. stated that Perovich took her to the back of the van, pulled down her shorts and "touched me here" referencing her genital area. In addition, she stated "he stuck his fingers inside me and moved them up and down." She also stated he pulled out his penis and made her touch it with her hands. K.R. relayed that this had happened a couple days earlier and had also happened to her sister R.R.

[¶ 7.] During R.R.'s interview she confirmed that Perovich touched K.R and recounted her own incidents with Perovich. She said Perovich had "sucked her tongue, licked her neck, sucked her privates, and stuck his fingers in her privates." She stated it happened three or four different times.

[¶ 8.] The two girls were later interviewed by Detective Sauvage of the Pennington County Sheriff's Office. K.R. stated that she had been touched in her "bad part" in the van and that Perovich had done the same on prior occasions. R.R. told the Detective of instances where Perovich had touched her while she was in the living room, in the dining room and in the van on other occasions.

[¶ 9.] Perovich was indicted and convicted of two counts of rape and criminal pedophilia against K.R. and three counts of rape and criminal pedophilia against R.R. Perovich was sentenced as a habitual offender based on his prior felony conviction for writing checks with insufficient funds. The trial court sentenced Perovich to ten mandatory life sentences due to his status as a habitual offender. The trial court determined that the five first-degree rape sentences were to run consecutive, and all criminal pedophilia sentences were to run concurrently to the rape sentences.

[¶ 10.] Perovich raises six issues on appeal:

1. Whether the trial court erred in allowing R.R. to testify by a writing and in receiving same as evidence.

2. Whether the trial court erred by allowing repeated leading questions and by allowing the prosecutor to interpret for R.R.

3. Whether the trial court erred in denying Perovich's motion for a mistrial based upon R.R's demeanor in the presence of the jury.

4. Whether the trial court erred in finding that there was sufficient evidence for the convictions relating to R.R.

5. Whether the alleged cumulative errors regarding R.R.'s testimony compromised the verdict on all counts.

6. Whether the trial court erred in sentencing Perovich to five consecutive and five concurrent life terms.

## STANDARD OF REVIEW

[¶ 11.] In determining the sufficiency of the evidence to constitute the crime, the question is "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d 15, 17. Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. *Tunender v. Minnaert*, 1997 SD 62, ¶ 9, 563 N.W.2d 849, 851 (citation omitted). Likewise, evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard. *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129. Under this standard, "not only must error

be demonstrated, but it must also be shown to be prejudicial error." *State ex rel Dep't of Transp. v. Spiry*, 1996 SD 14, ¶11, 543 N.W.2d 260, 263 (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976)). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Goodroad*, 1997 SD 46, ¶9, 563 N.W.2d at 129 (citing *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986)). Questions of law are reviewed de novo with no deference given to the trial court. *City of Colton v. Schwebach*, 1997 SD 4, ¶8, 557 N.W.2d 769, 771.

**[¶12.] 1. WHETHER THE TRIAL COURT ERRED IN ALLOWING R.R. TO TESTIFY BY A WRITING AND IN RECEIVING SAME AS EVIDENCE.**

■ [¶13.] When R.R. was called to the stand to testify she brought with her a stuffed bear, cried during the testimony and would not respond to certain questions. R.R. did answer general questions, but when asked about Perovich's contact with her, she would become unresponsive. After she repeatedly failed to respond, the prosecutor asked R.R. if she could write the answers. R.R. acceded and wrote out her answers the best she could. In response to the prosecutor's questioning, R.R. wrote that Perovich touched her "privet" with his "fegen" and "tug." The prosecutor attempted to have R.R. read the words she wrote to the jury but R.R. refused. The trial court admitted the written testimony and it was shown to the jury.

[¶14.] Perovich contends that allowing R.R. to testify in this manner violated his right to confront his accuser as guaranteed by the state and federal constitutions.

The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The South Dakota Constitution provides similar protections: "In all criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face...." S.D. Const. art. VI, § 7. The so-called Confrontation Clause provides two specific protections for criminal defendants. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). The first is being the right to face his accusers and the second is the right to cross-examine those who testify against him. *Id.*

*State v. Karlen*, 1999 SD 12, ¶37, 589 N.W.2d 594, 602.

■ [¶15.] The Confrontation Clause does not guarantee effective cross-examination, but guarantees the opportunity to confront the witness. *See id.* Therefore, our inquiry is whether Perovich was denied an *opportunity* for effective cross-examination. A review of the record reveals he was given such an opportunity.

[¶16.] Perovich's counsel was allowed to cross-examine R.R. on the contents of her testimony and handwritten notes. He inquired where she had learned the words she had written, and in actuality elicited more details concerning the allegation of touching than did the prosecutor. We acknowledge defense counsel's statement that this examination was difficult and he had to be careful not to create a negative reaction with the jury. However, Perovich's counsel was given the opportunity to examine R.R. on all her statements, including the handwritten responses. His choice

of trial strategy does not effect the analysis. He had the opportunity and conducted a meaningful cross-examination.

[¶ 17.] In support of his position, Perovich cites *Spears v. State*, 253 Miss. 108, 175 So.2d 158 (1965). In that case, the Mississippi Supreme Court determined it was a violation of defendant's right to confront his accuser when the witness refused to repeat the obscenity he muttered, but instead would only write it. *Id.* at 163. We find that case distinguishable. As noted by the *Spears* court, in a prosecution for obscenity the trial court's decision to allow the witness to write the obscenity "impressed upon the jury ... the fact that the words were of a most vulgar and obscene nature, and their repetition would constitute an impropriety." *Id.* at 164. This case stands in marked contrast to this situation, where the written words were private, finger, and touch or tongue, and mostly used to describe the body part touched or the action taken.

[¶ 18.] **2. WHETHER THE TRIAL COURT ERRED BY ALLOWING LEADING QUESTIONS AND ALLOWING THE PROSECUTOR TO INTERPRET FOR R.R.**

[¶ 19.] Perovich claims that the trial court erred in allowing the prosecutor to ask leading questions and characterizes the direct examination as improper prosecutorial testimony. This claim is not supported by the record as there was no attempt by Perovich to address this at trial. Therefore, we need not address this argument on appeal except to say "the trial court must be given an opportunity to correct any claimed error before we will review it on appeal." *State v. Heftel*, 513 N.W.2d 397, 401 (S.D.1994) (citations omitted).

[¶ 20.] **3. WHETHER THE TRIAL COURT ERRED IN DENYING PEROVICH'S MOTION FOR A MISTRIAL BASED UPON R.R.'S DEMEANOR IN THE PRESENCE OF THE JURY.**

[¶ 21.] Perovich asserts that R.R.'s conduct and demeanor irreparably damaged his right to a fair trial. When R.R. was called to testify, she entered the courtroom and refused to come forward, remaining in the back of the courtroom for five to six minutes crying. A brief recess was granted. The trial resumed with R.R. on the stand, where she testified while crying and holding a stuffed bear.

[¶ 22.] Perovich moved for a mistrial. In response, the trial court stated that he did not believe this was anything but a genuine display and was not an attempt to influence the jury and simply ordered a ten-minute recess. On appeal, Perovich asserts this was not enough and a mistrial was the only appropriate remedy.

[¶ 23.] In reviewing the grant or denial of a motion for mistrial, we have noted that:

> Trial courts have considerable discretion not only in granting or denying a mistrial (*State v. Closs*, 366 N.W.2d 138, 143 (S.D.1985)) but also in determining the prejudicial effect of a witness' statements. *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987). Only when this discretion is clearly abused will this court overturn the trial court's decision. *Id.; State v. Farley*, 290 N.W.2d 491, 494 (S.D.1980).

[¶ 24.] We are particularly hampered in our review of a motion for mistrial based on the demeanor of a witness. A cold record invariably lacks the emotion of the occurrence below. It is obvious that a trial of this type takes its toll on both witnesses and the parties. Whether or not these emotions amount to circumstances that create an unfair trial is best addressed within the discretion of the trial

court. After reviewing the record, it has not been shown that the trial court abused its discretion in denying the motion.

[¶ 25.] **4. WHETHER THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE FOR THE CONVICTIONS RELATING TO R.R.**

[¶ 26.] Perovich moved for a judgment of acquittal at the close of the State's evidence for all counts in which R.R. was the victim. The trial court denied that motion. Perovich asserts that the evidence for these convictions was insufficient as a matter of law.

[¶ 27.] In determining the sufficiency of the evidence to constitute the crime, the question is "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d at 17. The record contains evidence of statements made by R.R. implicating Perovich in the acts of sexual abuse, those statements were confirmed by testimony from two investigating officers and a nurse at the hospital where R.R. was examined. Perovich points to a lack of physical evidence and asserts that without such evidence this conviction cannot stand.

[¶ 28.] The testimony corroborated R.R.'s version of the events between her and Perovich. In addition, the lack of physical evidence was explained by the treating physician as "unremarkable" as he was not aware of the time when the abuse occurred or that it had been digital penetration. The question of guilt was to be resolved by a jury based on the testimony. There is no showing that the evidence was insufficient as a matter of law.

[¶ 29.] **5. WHETHER THE ALLEGED CUMULATIVE ERRORS REGARDING R.R.'S TESTIMONY COMPROMISED THE VERDICT ON ALL COUNTS.**

[¶ 30.] "We have previously held that the cumulative effect of errors by the trial court may support a finding by the reviewing court of a denial of the constitutional right to a fair trial." *State v. Davi*, 504 N.W.2d 844, 857 (S.D.1993); *McDowell v. Solem*, 447 N.W.2d 646, 651 (S.D.1989). Perovich asserts that the claimed errors below compromised the trial below and the verdict on all counts. This argument is without merit as there is no showing that any error compromised the trial.

[¶ 31.] **6. WHETHER THE TRIAL COURT ERRED IN SENTENCING PEROVICH TO FIVE CONSECUTIVE AND FIVE CONCURRENT LIFE TERMS.**

[¶ 32.] The State alleged five separate offenses against Perovich. The trial court sentenced Perovich to ten life sentences in which the criminal pedophilia counts are to run concurrent with the corresponding first-degree rape counts. Additionally, the trial court ordered all counts of first-degree rape to run consecutive with each other. Therefore, Perovich has ten life sentences, five running consecutively, and five running concurrently.

[¶ 33.] Perovich claims that under SDCL 22–6–6.1, the trial court was required to sentence him to concurrent sentences for all crimes prior to the date of the last offense. Yet, we have held "SDCL 22–6–6.1 is specific on its face and it allows for consecutive sentences regardless of when the offenses were committed or when the judgment or sentence was entered." *State v. Sieler*, 1996 SD 114, ¶ 16, 554 N.W.2d 477, 481. SDCL 22–6–6.1 authorizes the trial court to impose these sentences consecutively.

[¶ 34.] Even though Perovich raises no further issues, we cannot ignore

the plain error present in his sentencing. *See State v. Well,* 2000 SD 156, ¶ 23, 620 N.W.2d 192; *Wilcox v. Leapley,* 488 N.W.2d 654, 657 (S.D.1992); *State v. Johnston,* 478 N.W.2d 281, 285 (S.D.1991). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23A–44–15. As Perovich's sentencing violates the prohibition against double jeopardy, we reverse the five rape convictions and remand for resentencing as in *Well.*

[¶ 35.] "It is established law that a defendant cannot receive two convictions for one crime unless the legislature intended multiple punishments." *Well,* 2000 SD 156, ¶ 23, 620 N.W.2d 192 (citations omitted). Without factual evidence of two separate offenses or statutory authority, a jury conviction for multiple crimes for a single act of sexual penetration cannot stand. *Id. See also State v. Sprik,* 520 N.W.2d 595, 598 (S.D.1994). Perovich received two convictions for each act of sexual penetration, consequently these convictions violate the prohibition on double jeopardy.*

[¶ 36.] The prosecutor, in neither the charging documents nor evidence to the jury, sought to distinguish the acts constituting criminal pedophilia and those constituting first-degree rape. In fact, these were the same acts. Perovich was convicted of five counts of first-degree rape and five counts of criminal pedophilia. Though the trial court ran each first-degree rape charge concurrently with the corresponding criminal pedophilia charge, that is not enough to cure a double jeopardy violation. As the factual test for multiple punishments was not satisfied, our inquiry turns to whether the legislature intended multiple punishments for the same crime.

[¶ 37.] Whether a single act is punishable as two separate offenses is purely a question of legislative intent. See *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). The double jeopardy provisions of the United States and South Dakota constitutions are not violated if the legislature has clearly expressed an intent for multiple punishments for the same conduct. *Id.* at 778–89, 105 S.Ct. at 2411–12.

[¶ 38.] For example, in *Gore v. United States,* the United States Supreme Court upheld three consecutive sentences based on a single illicit drug transaction that violated three different statutes for the sale of illegal drugs. 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). While courts cannot impose multiple punishments for the same conduct, the Legislature can. *See Whalen v. United States,* 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980). If the Legislature has not authorized multiple punishments for the same act the court exceeds its jurisdiction in imposing such a sentence. *See State v. Groves,* 473 N.W.2d 456, 458 (S.D. 1991).

[¶ 39.] SDCL 22–22–1(1) provides:

Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

(1) If the victim is less than ten years of age . . .

[¶ 40.] SDCL 22–22–30.1 provides:

Criminal pedophilia is any act of sexual penetration accomplished with a victim

---

* This Court is presented with a similar issue in *State v. Dillon,* 2001 SD 97, 632 N.W.2d 37. To avoid any claims of undue prejudice resulting therefrom, in the future we encourage trial courts to provide alternative jury instructions.

less than thirteen years of age by any person twenty-six years of age or older under any circumstances not constituting incest as defined in § 22–22–1(6). It is clear that the plain meaning of these statutes do not demonstrate a legislative intent for cumulative punishments. In order to approve a cumulative punishment the Legislature must speak explicitly. *See Missouri v. Hunter,* 459 U.S. 359, 369, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Unless the expressed intent is clear, the trial court exceeds its jurisdiction by imposing multiple punishments. *Id.* For the applicable two-part test, *see State v. Dillon,* 2001 SD 97, 632 N.W.2d 37 (released simultaneously). Because first-degree rape carries a lesser minimum sentence, e.g., ten years as opposed to twenty-five years under criminal pedophilia, the five rape convictions should be vacated and the matter remanded for resentencing on the five criminal pedophilia convictions. *See Well,* 2000 SD 156, ¶ 25, 620 N.W.2d at 197; *Groves,* 473 N.W.2d at 458.

[¶ 41.] Therefore, we affirm in part, reverse in part and remand for resentencing consistent with this opinion.

[¶ 42.] MILLER, Chief Justice, and KONENAMP, and GILBERTSON, Justices, concur.

[¶ 43.] AMUNDSON, Justice, concurs specially.

AMUNDSON, Justice (concurring specially).

[¶ 44.] I concur on issues 1, 2, 4, 5 and 6.

[¶ 45.] I concur in the result on issue 3 and state that a record should have been made of the jurors regarding the impact of the witness' conduct on their ability to be fair and impartial. This would have made for more meaningful review of this issue. Also, it would have been better practice for the trial court to instruct the jury to disregard its observations of the witness' pre-testimony conduct in its deliberations.