2002 SD 140

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kevin SCHERR, Defendant and Appellant.**

**No. 22185.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 2002.

Decided Nov. 20, 2002.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Betsey Harris, Office of the Public Defender, for Pennington County, Rapid City, South Dakota, Attorney for defendant and appellant.

SABERS, Justice.

[¶ 1.] Kevin Scherr was charged with first degree murder (SDCL 22–16–4) and alternatively, second degree murder (SDCL 22–16–7). He was also charged with attempted first degree murder (SDCL 22–16–4 and SDCL 22–4–1). At the close of the State's case, Scherr moved for a judgment of acquittal based on insufficiency of evidence. The motion was denied. The trial court granted the

defense's request for alternative lesser included offense instructions on all counts. The court gave the jury first degree manslaughter instructions for both the first degree murder count and the alternative second degree murder count. The jury also received aggravated assault instructions on the attempted murder count.

[¶ 2.] Scherr was convicted of first degree murder and attempted first degree murder and was sentenced to life imprisonment for murder and 25 years consecutively for attempted murder. He appeals both convictions claiming insufficient evidence. We affirm.

## FACTS

[¶ 3.] Early in the afternoon of February 27, 2001, Scherr entered Chari Smith's home with a handgun and shot Smith, Sherin Harris, and himself. Smith died. Harris and Scherr both suffered life-threatening head wounds.

[¶ 4.] Early on the morning of the shootings, Smith, Harris and Scherr were at the Pennington County Courthouse for a hearing to determine whether a temporary restraining order against Scherr for Smith's benefit would be made permanent. At the hearing, Smith testified that she was frightened of Scherr and that he had been driving by her home and phoning her. Smith also testified that although the two had dated, she did not consider the relationship serious. The restraining order was made permanent and Scherr was arrested immediately for violating the prior temporary order.

[¶ 5.] Scherr bonded out of jail that afternoon and went to see his brother, Kraig, at work. Scherr told his brother that everything had been "dropped" at court and did not tell his brother that he had been arrested. Instead, he told Kraig

that someone threatened him in the courthouse parking lot. Scherr requested that his brother give him his .22 caliber gun and a tape recorder. He told Kraig that his reason for wanting the items was to "warn off" the person who threatened him and to record any possible confrontations. Scherr overcame his brother's concerns about providing the gun and they left Kraig's workplace and retrieved the gun, the recorder and half of a box of shells. Kraig testified that Scherr told him he needed only a few shells. Throughout their conversation, Scherr was "sad but calm."

[¶ 6.] After getting the gun, Scherr parked his car down the street from Smith's home and walked to her front door. To get to the front door of her home, Scherr had to walk by the vehicles of both Smith and Harris. When he got to the front door he walked in without invitation. Harris testified that when he walked in the door, he said, "Think you're pretty funny. Well I'm not going to jail." She stated that Scherr had a gun in his hand and that he told them he was going to kill them and then kill himself. When Harris reached for the phone, Scherr told her to put it down and she did.

[¶ 7.] Scherr aimed the gun at Harris and tried to fire twice, but was unsuccessful as the gun only clicked. Harris began to struggle with Scherr and was ultimately shot in the head. Harris played dead, and as she was lying on the floor, she heard two more shots. After waiting awhile, she got up and saw Scherr and Smith lying on the kitchen floor. Harris ran to another home and emergency personnel were called. Smith was pronounced dead at the scene. Harris and Scherr were transported to Rapid City Regional Hospital where both underwent surgery.

## STANDARD OF REVIEW

[¶ 8.] "In determining the sufficiency of the evidence to constitute the crime, the question is 'whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt.'" *State v. Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d 12, 15 (quoting *State v. Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d 15, 17). The evidence and its reasonable inferences are viewed in the light most favorable to the guilty verdict. *State v. Lewandowski*, 463 N.W.2d 341, 344 (S.D. 1990) (citing *State v. Huettl*, 379 N.W.2d 298, 301 (S.D.1985)) (citation omitted). We do not "resolve conflicts in the evidence, pass on the credibility of the witnesses, or weigh the evidence," because "[t]hese functions lie solely within the province of the jury." *State v. Burtzlaff*, 493 N.W.2d 1, 4 (S.D.1992) (citations omitted). We will not set aside a jury verdict unless the evidence and its reasonable inferences do not sustain a rational theory of guilt. *Burtzlaff*, 493 N.W.2d at 4–5 (citations omitted).

[¶ 9.] **1. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION FOR FIRST DEGREE MURDER.**

[¶ 10.] SDCL 22–16–4 provides: Homicide is murder in the first degree when perpetrated ... with a premeditated design to effect the death of the person killed or any other human being.

[¶ 11.] Scherr argues that the evidence presented at trial did not support the conviction for first degree murder. He contends instead that the evidence supports only first degree manslaughter because the killing occurred either in the heat of passion (SDCL 22–16–15(2)) or he acted without a design to effect death by means of a dangerous weapon (SDCL 22–16–15(3)). In other words, he contends there

was insufficient evidence to support a finding of premeditation.*

[¶ 12.] The defense theory is that Scherr was humiliated and hurt because Smith had trivialized a serious relationship and that despite a loving, two-year relationship, she testified that morning that she no longer wished to see him. As a result of this humiliation and hurt he decided to kill himself. The defense argues that the evidence at trial was more consistent with its argument that he went to Smith's house to confront her and kill himself, but that because Harris was unexpectedly there, things "spun out of control." All of this, Scherr contends, makes the jury finding of premeditation lack a rational basis. We disagree.

[¶ 13.] The jury heard evidence of restraining orders, Scherr's violation of the temporary order and his arrest for that violation. Smith was frightened of Scherr, as he had been stalking her. She spent little time in her own home because she feared he would come there. Scherr contacted his brother and lied to him to obtain a gun and shells immediately after being released from jail. The jury received evidence that Scherr parked away from Smith's house and walked to the door rather than pulling into her driveway. Further, the jury heard evidence that Scherr had to walk past Harris's car to get to Smith's front door. Finally, the jury heard Harris testify to Scherr's words and actions before the shooting. There was sufficient evidence of premeditation for the jury to have rationally reached its verdict on the charge of first degree murder.

[¶ 14.] 2. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION FOR ATTEMPTED FIRST DEGREE MURDER.

[¶ 15.] SDCL 22–4–1(5), on criminal attempt, combined with SDCL 22–16–4, the first degree murder statute, requires the State to prove that Scherr 1) had a premeditated design to effect Harris's death; 2) attempted to kill her; 3) did an act to effect the killing, and 4) failed to actually kill her.

[¶ 16.] As with the first issue, Scherr contends that there was insufficient evidence to show premeditation. He argues here, as he did at trial, that he had no idea Harris would be in the home when he arrived and that her presence there caused events to spiral out of control resulting in her being shot. He contends that the jury could not have reasonably found premeditated design to murder Harris.

[¶ 17.] A design to effect death need exist for only one instant before the commission of the crime. SDCL 22–16–5. Scherr saw Harris's car before he entered the house and could have turned back then, the gun misfired twice and he could have turned back then, but he did not. Finally, he told her moments before he shot her that he was going to kill her. This was sufficient for the jury to reasonably find premeditation beyond a reasonable doubt. We affirm.

[¶ 18.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶ 19.] AMUNDSON, Retired Justice, concurs.

---

* Scherr also argues on both issues that Harris's credibility at trial was impeached because she could not account for the fourth bullet, did not tell the police immediately about the gun misfiring or Scherr telling her to put the phone down and finally she was inconsistent in her statements as to the order of the shootings. As stated above, we do not pass on the credibility of witnesses in determining sufficiency of evidence. That is a function solely within the province of the jury.

[¶ 20.]  KONENKAMP, Justice, deeming himself disqualified, did not participate.