2003 SD 5

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jon JOLLEY, Defendant and Appellant.**

No. 22078.

Supreme Court of South Dakota.

Argued Oct. 7, 2002.

Decided Jan. 8, 2003.

Lawrence E. Long, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, for plaintiff and appellee.

Michael Stonefield, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

AMUNDSON, Justice (Retired).

[¶ 1.] On May 30, 2001, Jon Jolley was convicted of second-degree felony murder and child abuse. Jolley was sentenced to life in prison without parole on the second-degree felony murder conviction and ten years in prison on the child abuse conviction. Jolley appeals. We affirm.

### FACTS

[¶ 2.] On the morning of July 31, 2000, six-year-old Barrett Jolley (Barrett) collapsed in the living room of the home of Jon Jolley (Jolley), his father. An ambulance was summoned to the scene. Barrett's body was lifeless when the paramedics arrived. The paramedics removed Barrett's clothes and found his body covered with bruises. The child was immediately taken to the hospital. Despite resuscitation efforts, Barrett was pronounced dead at the hospital. Barrett's death was attributed to blunt force trauma.[1]

---

1. The uncontested evidence depicts a nightmarish experience during the deceased minor's last four to five days at the family residence. Evidence shows he was physically and mentally abused. The minor was disciplined severely for simply wanting to live with his grandmother. An obvious request from a child being beaten daily. A review of the record certainly reveals that pet owners treat animals better than the young boy was treated

[¶ 3.] Thereafter, Jon Jolley and Karry Luthy (Luthy) were arrested and charged with second-degree murder, second-degree felony murder, and child abuse. Subsequently, Luthy entered into a plea agreement whereby she pled to two counts of child abuse, and received two concurrent ten-year prison sentences. Pursuant to this agreement the charges of second-degree murder and second-degree felony murder were dismissed.

[¶ 4.] After a jury trial, Jolley was found guilty of second-degree felony murder and child abuse. On these convictions Jolley was sentenced to life imprisonment for second-degree felony murder and ten years for child abuse. Jolley appeals the following issues:

1.) **Whether the trial court erred in denying the admission of other acts evidence regarding state witness Karry Luthy.**

2.) **Whether the trial court erred in denying the introduction of the sentence faced by state witness Karry Luthy before she accepted a plea offer.**

3.) **Whether the trial court erred in allowing the admission of other acts evidence regarding Jolley.**

## STANDARD OF REVIEW

[¶ 5.] In reviewing a trial court's decision to admit other acts evidence this Court will not overrule the trial court's decision unless there is an abuse of discretion. *State v. Anderson,* 2000 SD 45, ¶ 93, 608 N.W.2d 644, 670; *State v. Larson,* 512 N.W.2d 732, 736 (S.D.1994); *State v. McDonald,* 500 N.W.2d 243, 245 (S.D. 1993); *State v. Werner,* 482 N.W.2d 286, 288 (S.D.1992).

"Upon review ... we must be careful not to substitute our reasoning for that of the trial court." *Larson,* 512 N.W.2d at 736. Thus, the question is not whether, had we been the trial judge, would we have admitted the prior bad acts evidence but whether the trial court sitting in this case abused its discretion by doing so. *Id.; State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986).

*Anderson,* 2000 SD 45 at ¶ 93, 608 N.W.2d at 670.

This Court will only disturb decisions of the trial court regarding the admission of evidence if there is a clear abuse of discretion. *State v. Devall,* 489 N.W.2d 371, 374 (S.D.1992); *State v. Olesen,* 443 N.W.2d 8, 9 (S.D.1989); *State v. Bawdon,* 386 N.W.2d 484, 486 (S.D.1986); *State v. Percy,* 80 S.D. 1, 117 N.W.2d 99, 100 (1962). " 'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Devall,* 489 N.W.2d at 374 (quoting *State v. Pfaff,* 456 N.W.2d 558, 561 (S.D.1990)). Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.

*State v. Orelup,* 520 N.W.2d 898, 900–901 (S.D.1994).

## DECISION

[¶ 6.] **1.) Whether the trial court erred in denying the admission of other acts evidence regarding state witness Karry Luthy.**

[¶ 7.] Jolley claims the trial court should have granted his Motion to Use Other Acts Evidence. Jolley contends tes-

---

by his father and step-mother. It goes without saying that pet owners give their pets more love and attention than this young boy received over those last days.

timony regarding Luthy's past volatile relationships with men should have been allowed to show identity or in the alternative modus operandi.

[¶ 8.] SDCL 19–12–5 governs the admission of other acts evidence. The statute reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To determine the admissibility of other acts evidence the court must first determine: (1) whether the intended purpose is relevant to some material issue in the case, and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *Anderson*, 2000 SD 45 at ¶ 92, 608 N.W.2d at 669; *State v. Moeller*, 1996 SD 60, ¶ 13, 548 N.W.2d 465, 472 (citation omitted).

[¶ 9.] This Court has said,

> [U]nder § 404(b) other acts evidence may not be admitted if its sole purpose

is to establish an inference from bad character to criminal conduct. It is admissible when similar in nature and relevant to a material issue, and not substantially outweighed by its prejudicial impact. The degree of similarity required for other act evidence will depend on the purpose for which it is offered. *State v. Wright*, 1999 SD 50, ¶ 16, 593 N.W.2d 792, 799–800.

[¶ 10.] Jolley maintains that the testimony is relevant to show identity or modus operandi. This Court has held that "modus operandi evidence used to establish identity requires a high degree of similarity." *Wright*, 1999 SD 50 at ¶ 18, 593 N.W.2d at 800.

[¶ 11.] At the motion hearing Rhonda Jolley testified that she had seen Luthy on several occasions hit her boyfriend, her first husband, and her second husband. She further testified that Luthy had a bad temper and that she thought Luthy could be abusive.

[¶ 12.] The trial court determined that the evidence of other acts was not similar enough in nature to show identity in the case before it.[2] In addition, the

---

**2.** There is authority supporting the argument that a lower standard should be utilized when evaluating the admissibility of other acts evidence when offered by the defendant. See *United States v. Stevens*, 935 F.2d 1380, 1404–1405 (3rdCir.1990)(a lower standard of similarity should govern "reverse 404(b)" evidence because prejudice to a defendant is not a factor); *United States v. Cohen*, 888 F.2d 770, 776 (11thCir.1989)(the standard for admission is relaxed when the evidence is offered by the defendant); *United States v. Aboumoussallem*, 726 F.2d 906, 911–912 (2dCir.1984)(risks of prejudice are normally absent when the evidence is offered by the defendant); *People v. Bueno*, 626 P.2d 1167, 1169 (Colo.Ct.App.1981)(when a defendant offers such evidence for defensive purposes, the concerns which gave rise to the rule are no longer applicable); *State v. Garfole*, 76 N.J.

445, 388 A.2d 587, 591 (N.J.1978)(other acts evidence used defensively requires a lower standard of degree of similarity).

We declined to adopt this more liberal standard in favor of the defendant. In *State v. White*, this Court addressed this issue and ultimately declined to adopted a more liberal standard. 1996 SD 67, 549 N.W.2d 676. We adhere to the holding in *White*. Even if we were to adopt a more liberal standard, a showing of similarity must still be made by the defendant. In each of the cases supporting a lower standard for other acts evidence offered by the defendant, a degree of similarity must still be shown.

The New Jersey Court in *Garfole*, was one of the first to adopt a more liberal standard in favor of the defendant. The court in *Garfole*, relaxed the standard of admissibility for other acts when offered by the defendant. The

trial court also noted that such evidence would be more prejudicial than probative. The trial court reasoned that the other acts testimony proposed by Jolley involved adults, not children, stating past failed romantic relationships and marriages between adults is not similar enough in nature to a charge of child abuse. The testimony was "more toward character than anything else." The trial court applied the proper balancing test and found the proposed testimony was not relevant. The trial court did not abuse its discretion in finding that there was no integral link between Luthy's turbulent romantic relationships and a small child being beaten to death.[3]

**[¶ 13.] 2.) Whether the trial court erred in denying the introduction of the sentence faced by state witness Karry Luthy before she accepted a plea offer.**

■ [¶ 14.] Jolley argues that the trial court unduly limited his right to cross-examine Luthy and thus violated his Sixth Amendment right to confront a witness. "The Confrontation Clause does not guarantee effective cross-examination, but

court held that a "a lower standard of degree of similarity of offenses may justly be required of the defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used incriminatorily." 388 A.2d at 591.

The court in *Stevens*, examined *Garfole*, and ultimately held that although the crime need not be a "signature crime" it nevertheless must be sufficiently similar to the crime at hand. 935 F.2d at 1384. It is clear from the case law that a similarity between the crimes must be present. Each of the cases supporting a more liberal standard for other acts evidence when offered by the defendant found similarities between the crime being charged and the other act offered.

In *Stevens*, the court compared the charged crime with the other act offered. The court ultimately found enough similarities to admit the other act. The court found both crimes involved a gun, a wallet being stolen, the assailant searching the victims for money, both happen in the same area, around the same time frame, and in both crimes military IDs were taken and used to cash stolen checks in the same area. Although the court was applying a more liberal standard it is clear that similarities between the two must still be shown. *Id.* at 1401.

The trial court found that the defendant failed to show similarity between the other acts offered and the charge at hand. The defendant has failed to show any similarity that would, under either standard, require a reversal.

3. A review of *State v. Fulston*, supports the trial court's evidentiary ruling in this case.

325 N.J.Super. 184, 738 A.2d 380 (A.D.1991). In Fulston, the defendant testified to his version of what transpired between himself and the victim's mother. *Id.* at 382. In this case the defendant did not testify so there is no conflicting version. In Fulston, the other acts admitted involved past physical abuse of the victim by the state's witness. *Id.* at 384. In this case there is no evidence of past physical abuse by Luthy of the victim. Further, the defendant was able to cross-examine the witness regarding her plea to child abuse. Additionally, the court in *Fulston* held as follows:

it is not enough to prove some hostile event and leave its connection with the case to mere conjecture. "Somewhere in the total circumstances there must be some thread capable of inducing reasonable [persons] to regard the event as bearing upon the State's case." *Ibid.*

... The fact that witnesses observed Damaris abusing the child near the time of the homicide had a legitimate tendency to support the inference that she, and not defendant, killed the victim. This evidence was particularly poignant in light of Damaris's confession to one of the proffered witnesses that she wished Michai has never been born....

738 A.2d 380, 384 (A.D.1999). There was no thread of similarity shown regarding the other acts evidence offered in this case or actual observations of Luthy physically abusing the victim as was the case in *Fulston*. Therefore, the trial court properly exercised its discretion in denying the admission of the offered other acts evidence.

merely guarantees the opportunity to confront the witness." *State v. Perovich,* 2001 SD 96, ¶ 15, 632 N.W.2d 12, 16. Therefore, the inquiry we must make is whether Jolley had an opportunity for effective cross-examination of Luthy.

[¶ 15.] The scope and extent of cross-examination is "largely within the sound discretion of the trial court." *State v. Grooms,* 504 N.W.2d 111, 112 (S.D.1993) (citations omitted). Jolley's hands were not completely tied on cross-examination. Although Jolley was prevented from questioning Luthy regarding the life sentence she faced before the plea bargain, Jolley, nonetheless, was able to cross-examine Luthy regarding her plea bargain.

[¶ 16.] On direct examination Luthy testified that she had been facing a charge of murder and child abuse and subsequently entered into a plea agreement. Luthy also indicated that she pled guilty to two counts of child abuse and was facing a maximum twenty-year sentence. Luthy also admitted on direct that she agreed to testify in return for the plea bargain she received. Although Jolley was not permitted to cross-exam Luthy about the life sentence she was initially facing, Jolley was able to question Luthy about her knowledge of the severity of the sentence she was facing on the murder charge. The record indicates Luthy agreed that the murder charge she faced before the plea bargain was substantially more serious than the charges of child abuse.

[¶ 17.] Despite not being able to question Luthy about the life sentence she was facing, the defense had plenty of ammunition to attack Luthy's credibility. The defense was able to cross-examine Luthy about her plea agreement, that she had made inconsistent statements and flat out lied continuously throughout the investigation, that the murder charges against her had been dropped, and that she received a lesser sentence through her cooperation. During closing arguments the defense spent the majority of the time attacking Luthy's credibility.

[¶ 18.] We cannot say that the trial court abused its discretion in limiting cross-examination. We affirm.

[¶ 19.] **3.) Whether the trial court erred in allowing the admission of other acts evidence regarding Jolley.**

[¶ 20.] Jolley asserts that the trial court erred when it allowed the state to offer other bad acts, pertaining to an incident in which Jolley allegedly kicked his daughter. Jolley contends that the trial court did not use the same relevancy test used to keep out the other bad acts of Luthy. To the contrary the trial court allowed both Jolley and the state to present testimony regarding their respective motions.

[¶ 21.] The record indicates the trial court performed the same balancing test to both motions. The trial court made a determination that the testimony concerning the other bad acts of Jolley were relevant to a material issue in the case. The trial court further found that the testimony was more probative than prejudicial. The court reasoned that the act had sufficient similarities to the offense now charged and was probative on the issue of identity. Unlike the other bad acts Jolley proposed to use against Luthy, the acts here involve a child and were similar in nature to the charge of child abuse.

[¶ 22.] The trial court also found the act to be admissible for the purpose to show absence of mistake or accident. This Court has said that "the use of other crimes and wrongs to show 'absence of mistake or accident is well established, particularly in child abuse cases.'"

*Wright*, 1999 SD 50 at ¶ 23, 593 N.W.2d at 802. Initially, during the investigation both Jolley and Luthy said that the bruises on Barrett were from accidents. Both Jolley and Luthy claimed that Barrett had been throwing himself against things and that he had fallen out of the bathtub.

[¶ 23.] Although Jolley contends the court has made inconsistent rulings the record shows the trial judge applied the same balancing test and did not abuse his discretion in allowing the other bad acts evidence. We affirm.

[¶ 24.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 25.] ZINTER, Justice, concurs specially.

[¶ 26.] SABERS, Justice, dissents.

[¶ 27.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

ZINTER, Justice (concurring specially).

[¶ 28.] I concur, and write on Issue 2 only to opine that the trial court allowed *effective*[4] cross-examination of Luthy under the particular facts and circumstances of this case. Although the trial court prohibited reference to the precise sentence Luthy could have received under a murder charge, effective inquiry was permitted into all other aspects of the plea agreement including the sentence reduction and

the adverse credibility inferences to be drawn from that reduction. More specifically, Jolley was permitted to cross-examine Luthy on her reduction of charges (from murder to child abuse relating to Barrett and A.J.). In that examination, Jolley exacted Luthy's concession that because of the plea agreement, Luthy was now only facing a twenty-year potential sentence rather than "a lot more than that." Under further cross-examination, Luthy even admitted that the sentence she previously "fac[ed] on the murder charge was substantially more serious than what [she was] now facing," and that she "understood" the severity of that previous, potential sentence. Luthy finally admitted that she had agreed to testify in return for this reduction in charges and reduced potential sentence under the plea agreement.

[¶ 29.] Thus, the actual cross-examination permitted the jury to know the grounds upon which any bias, prejudice or lack of credibility could be inferred. Although the circuit court imposed a limited restriction to prevent disclosure of the specific sentence for murder (because it would also disclose the sentence Jolley faced if convicted), Jolley concedes in his brief "that he was allowed extensive cross-examination of Luthy." Thus, even with the limitation on disclosure of the precise sentence for murder, the jury was not prevented from considering the negative inferences to be drawn from Luthy's plea

---

4. As the Court notes today, there is language in our opinions stating that "[t]he Confrontation Clause does not guarantee effective cross-examination, but guarantees the opportunity to confront the witness." *See*, ¶ 12, *supra* (citing *State v. Perovich*, 2001 SD 96, ¶¶ 14–15, 632 N.W.2d 12, 16). This *Perovich* citation is based upon *State v. Karlen*, 1999 SD 12, 589 N.W.2d 594. *Karlen*, does however, permit "effective" cross-examination. Karlen more precisely states "the Confrontation Clause only guarantees an opportunity for

*effective* cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendants might wish." (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 SCt 989, 999, 94 L.Ed.2d 40, 54 (1987)). Under this standard, even if the cross-examination was not effective "in whatever way, and to whatever extent [Jolley] might wish," it was, nevertheless effective to disclose the possible sources for impeachment of Luthy.

agreement. On the contrary, Jolley's cross-examination permitted him to argue to the jury that Luthy was biased and not credible because, as Jolley's counsel put it, "she gained one of the most significant things that a person on the face of the earth could gain—[t]hey dismissed the murder charge against her."

[¶ 30.] Therefore, the trial court's balancing process correctly excluded the impermissible disclosure of Jolley's potential sentence, while it permitted effective testing through cross-examination of the credibility and believability of Luthy's testimony. This is the Confrontation Clause's concern. Considering the actual cross-examination that was permitted, Jolley's assertion—that the additional disclosure of the precise sentence for murder would have damaged Luthy's credibility to the point where the jury's verdict may have changed-is untenable. Because the negative credibility inferences arising from the sentence reduction were clearly disclosed, a reasonable jury would probably not have come to a significantly different impression if the precise sentence had been disclosed. Jolley therefore failed to meet his burden of establishing a Confrontation Clause deprivation. *State v. Walton*, 1999 SD 80, ¶ 25, 600 N.W.2d 524, 530.

SABERS, Justice (dissenting).

[¶ 31.] I dissent because the trial court abused its discretion by not admitting prior acts evidence offered by Jolley and by not allowing the Defendant to question Luthy regarding the details of the sentence she faced prior to her plea agreement. These things taken together amount to cumulative error and the conviction should be reversed to allow Defendant a fair trial.

[¶ 32.] The majority opinion states in the footnote on page 308 that this Court has "declined to adopt [a] more liberal

standard" with regard to prior bad acts evidence offered by criminal defendants. This is a misstatement of our opinion in *White*, where we stated, "[s]ince White does not meet even the test of simple relevance, there is no need at this time to decide whether to adopt this rule." *State v. White*, 1996 SD 67, ¶ 16, 549 N.W.2d 676, 681. *White* left the door open to the possibility that this Court would consider whether to adopt a more liberal standard, and we should do so in this case.

[¶ 33.] When an individual criminal defendant is pitted against the State with all of its resources, he is at a distinct disadvantage. Thus, our rules of criminal procedure and evidence were enacted and intended to level the playing field so that he may have a fair trial. Our cases have rendered SDCL 19–12–5 powerless as a shield to protect defendants from prejudicial testimony. Now, despite the fact that this statute has become a powerful sword for the State, the Court denies defendants the same latitude in offering prior acts evidence. This does nothing to level the playing field; on the contrary, it tilts the field in favor of the State. Must the State always have the wind at its back and in the face of the defendant?

[¶ 34.] The purpose of SDCL 19–12–5 is to prevent the jury from inferring from prior acts that the defendant committed the crime charged. The prejudice created by allowing introduction of prior bad acts to show propensity on the part of the defendant to commit the crime charged is so great it denies the defendant a fair trial. This purpose is not served by denying the criminal defendant the ability to introduce evidence of other acts by the State's witnesses.

[¶ 35.] The theory of the defense was that it was Luthy, rather than Defendant, who committed the abuse leading to the child's death. To that end, in the interest

of providing him with a fair trial, the trial court should have allowed Jolley to present all evidence relevant to that theory. At trial, the State characterized Defendant as a "muscle builder" and "the person who had the strength to do this." The testimony offered by Defendant was relevant and probative to the State's position that Luthy was incapable of committing the acts against the child. Therefore, it was relevant and probative that Jolley was not the only party capable of the severe and fatal abuse.

[¶ 36.] "Relevance" is defined as evidence having any tendency to make the existence of a fact more or less likely. SDCL 19–12–1. This Court has been very clear that it construes the question of relevancy very liberally. For example, we recently stated,

> [t]he law favors admitting relevant evidence no matter how slight its probative value ... 'It is sufficient that the evidence has a tendency to make a consequential fact *even the least bit* more probable or less probable than it would be without the evidence.'

*State v. Bunger*, 2001 SD 116, ¶ 11, 633 N.W.2d 606, 609 (quoting *Larson*, § 401.1 p. 109) (emphasis in the original). Based on our precedent, the evidence offered by Jolley meets the threshold requirement of relevance. We should adopt the rule of other courts which permits admission of such relevant evidence *by the defense* because denying the use of the evidence on the grounds of "prejudice" defies common sense.

[¶ 37.] In *State v. Fulston*, the New Jersey appellate court was faced with a similar factual scenario. A small child was beaten to death. There were only two adults with access to the child at the time he was fatally abused, and the defendant claimed that the State's primary witness was the one who committed the crime.

The court noted that the purpose of excluding prior acts that show propensity was "grounded in [the evidence's] distinct capacity to prejudice the accused." 325 N.J.Super. 184, 738 A.2d 380, 383 (A.D. 1999). The court concluded:

> when the defendant offers proof of that kind exculpatorily, prejudice to the defendant is no longer a factor. More specifically, there is no danger that the jury will convict the defendant of the crime being tried merely because of his sordid, criminal past.

*Id.* Thus, if the evidence offered by the defendant is relevant as to guilt or innocence of the conduct charged, it should be admitted. *Id.*

[¶ 38.] Adopting this test will promote the purpose of SDCL 19–12–5 and provide the Defendant his constitutional rights to confront witnesses and receive a fair trial. Additionally, this rule makes sense. The important question in this case is who would be prejudiced by introduction of this evidence? Luthy could not be convicted of the crime based on this testimony, so there is no prejudice to her. The only detrimental effect against the State would be that the testimony may raise a reasonable doubt in the minds of the jurors. This, of course, is not unfair prejudice, but properly puts the State to its burden of proving every element beyond a reasonable doubt.

[¶ 39.] The trial court also abused its discretion in denying Jolley the opportunity to cross examine Luthy regarding the sentence she faced prior to her plea agreement. Jolley's Sixth Amendment right to confront the witnesses against him was violated when he was prevented from fully exploring Luthy's credibility and bias. The primary means by which a defendant can test the credibility and bias of a witness is through cross examination. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). The

Supreme Court has stated that a defendant raises a confrontation clause violation by showing,

> that he was prohibited from engaging in otherwise appropriate cross examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986) (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355).

[¶ 40.] Prior to her plea agreement, Luthy was facing a murder charge and a substantially greater sentence than the one she faces under her plea agreement. The central issue in any plea agreement is the sentence. Denying Jolley the opportunity to inquire fully into this issue denied him the ability to address the most important aspect of the plea agreement. Jolley was unable to develop the depth of bias this witness carried with her to the stand, and the result is that his right to confront this witness was violated.

[¶ 41.] The cumulative effect of errors by the trial court may support a finding of denial of the constitutional right to a fair trial. *State v. Davi*, 504 N.W.2d 844, 857 (S.D.1993); *McDowell v. Solem*, 447 N.W.2d 646, 651 (S.D.1989). This trial was a credibility contest between Luthy and Jolley; the only two people who could have committed this heinous crime. While allowing the State to introduce prior acts testimony (from Luthy's mother) against the Defendant, the trial court denied the Defendant evidence of Luthy's prior acts. The trial court compounded this prejudice by preventing Jolley from effectively cross examining Luthy about her bias. These decisions, taken together, constitute cumulative error and we should reverse and remand for a fair trial.