Argued and submitted April 28, affirmed November 2, 1994, petition for review denied January 24, 1995 (320 Or 508)

# STATE OF OREGON,
*Respondent,*

*v.*

# RICHARD HALE THOMPSON,
*Appellant.*

## (92-01-30083; CA A76121)

884 P2d 574

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals his convictions, following a jury trial, for kidnapping in the first degree, ORS 163.235, rape in the first degree, ORS 163.375, and several related crimes. He contends that the court erred in excluding certain evidence of the complainant's prior sexual conduct and in excluding evidence that allegedly pertained to complainant's motive to fabricate her accusation. Defendant also argues that he was improperly sentenced. We affirm.

Defendant and the complainant offered sharply conflicting versions of the incident giving rise to defendant's convictions.[1] The complainant testified that late in the evening of January 13, 1992, after leaving a tavern with defendant at his request, defendant forced her into his car, duct taped her hands and mouth, and drove her to a remote location where he forced her to walk around while threatening to kill her. Defendant then drove her to his parents' home and forced her to engage in various sexual acts while physically abusing and threatening her. The complainant testified that at one point defendant squeezed her so hard she could not breathe. She testified that, after defendant fell asleep, she "pulled away really slowly," ran upstairs, and woke defendant's parents yelling, "Your son raped me." She then called her father and boyfriend, and they immediately took her to the hospital.

Defendant testified that the complainant asked to leave the tavern with him to look for drugs, and that she engaged in consensual sex with him in exchange for cocaine. Defendant denied duct taping the complainant.

Defendant first assigns error to the trial court's exclusion of specific instances of the complainant's past sexual behavior. Defendant made a general offer of proof identifying two individuals with whom the complainant had allegedly offered to exchange sex for drugs. He argues that this evidence was admissible for four reasons. First, the fact that the complainant traded sex for drugs on other occasions made it more likely that she did so with defendant, supporting

---

[1] It is undisputed that defendant and the complainant knew each other for many years prior to January 13, 1992, and that the complainant had frequently used cocaine.

his theory that the complainant consented. Second, that evidence reflected defendant's state of mind, *i.e.*, that he believed that the complainant consented to have sex with him. Third, the evidence was relevant to prove a pattern of distinctive sexual behavior. Finally, defendant argues that the evidence was admissible to impeach the complainant.

The trial court ruled that the proffered evidence was inadmissible under OEC 412, which provides, in part:

"(1)   Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2)   Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

"(a)   Admitted in accordance with subsection (3)(a) and (b) of this section; and

"(b)   Is evidence that:

"(A)   Relates to the motive or bias of the alleged victim; or

"(B)   Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C)   Is otherwise constitutionally required to be admitted."

The trial court did, however, allow defense counsel to inquire about the complainant's past sexual relationship, and drug use, with defendant. It also allowed defense counsel to examine the complainant about her prior fabrication of a rape accusation.[2]

■■   As a preliminary matter, the state contends that defendant's offer of proof is inadequate for our review because it was insufficiently detailed. We disagree. In *State v.*

---

[2] The complainant previously had fabricated a story that she had been kidnapped, possibly raped, robbed, and left in the back of a car with a dead person, to avoid the consequences of having failed to return with drugs she had been entrusted to buy.

*Wonderling*, 104 Or App 204, 207, 799 P2d 1135 (1990) we said that "[a]n offer of proof is adequate if we are able to determine whether it was reversible error to exclude proffered evidence." In particular:

> "The tender should embody the specific fact or facts in such connection and in such terms as to be apprehended and ruled upon in the intended sense by the trial judge and be examined and applied in the appellate court in the proper light to test the accuracy of the ruling, if adverse." *State v. Foster*, 296 Or 174, 181, n 2, 674 P2d 587 (1983).

Here, defendant's pretrial offer of proof pursuant to OEC 412(3)[3] identified two individuals, by name and address, with whom the complainant allegedly had previously offered to exchange sex for drugs. At an *in camera* hearing, defense counsel explained in detail why he believed this evidence was relevant and admissible under OEC 412. Consequently, defendant's offer of proof was sufficient for us to assess the propriety and impact of the exclusion of defendant's "sex for drugs" evidence.

We turn, then, to the merits of the trial court's ruling. The legislative commentary to OEC 412 states:

> "The principal purpose of [OEC] 412 is to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives. It does so by narrowly circumscribing when such evidence may be admitted. It does not do so, however, by sacrificing any constitutional right possessed by the defendant. The rule balances the interests involved: the interest of the victim of a sexual crime in protecting a private life from unwarranted public exposure, and the defendant's interest in being able to

---

[3] OEC 412(3) provides, in part:

"(a) If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin * * *.

"(b) The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in camera to determine if such evidence is admissible."

present adequately a defense by offering relevant and proba-
tive evidence." Legislative Commentary to Rule 412,
*reprinted in* Kirkpatrick, *Oregon Evidence* 202 (2d ed 1989).

In *State v. Wright*, 97 Or App 401, 405, 776 P2d 1294, *rev den*
308 Or 593 (1989), we described a three-step analysis a trial
court must follow in determining the admissibility of evi-
dence under OEC 412:

> "First it must determine whether the evidence concerns a
> victim's 'past sexual behavior.' * * * Second, if the evidence
> does concern past sexual behavior, and is offered in the form
> of opinion or reputation, the court must deny its admission
> under OEC 412(1). If it is offered in some other form, then
> the court must determine whether the purpose of the offer
> fits within one of the exceptions in OEC 412(2)(b)(A), (B) or
> (C). If it does not, then the court may not admit the evidence.
> Third, if it does fit within an exception, the court must
> balance the probative value of the evidence against its preju-
> dicial effect."

Here, the evidence that defendant proffered concerned the
complainant's "past sexual behavior," *i.e.*, that she previ-
ously offered to exchange sex for drugs. That evidence was
not offered "in the form of opinion or reputation." Thus, the
OEC 412 issue reduces to whether the evidence is admissible
under one of the exceptions in OEC 412(2)(b). Defendant
argues that the evidence pertained to OEC 412(2)(b)(A),
because it "relates to the motive or bias of the alleged victim,"
and to OEC 412(2)(b)(C), as evidence that "is otherwise
constitutionally required to be admitted."

Our analysis in *State v. Niles*, 108 Or App 735, 817
P2d 293 (1991), *rev den* 312 Or 589 (1992), forecloses defen-
dant's first, "motive or bias" argument. There, the defendant
sought to admit evidence that the complainant had had
consensual sex with two individuals under circumstances
similar to his own, and argued that the evidence was proba-
tive of the complainant's motive to accuse him. The trial court
excluded the evidence, and we affirmed:

> "We are also unpersuaded by defendant's argument that
> evidence of the victim's other sexual relationships is relevant
> to show that her motive for accusing him was fear of her
> boyfriend's reaction to her late return home on the night of
> the incident. We see no logical connection between two prior
> incidents of consensual sexual activity and the victim's

alleged motive to accuse defendant in this case, and defendant offers no rationale to explain the relation. Evidence about the prior incidents did not make it more probable that she was motivated to fabricate, or that she was biased against defendant. OEC 412(2)(b)(A). It was not relevant, because it did not show 'a particularized motive or bias against the person offering the evidence.' *State v. Wright*, 97 Or App 401, 407, 776 P2d 1294, *rev den* 308 Or 593 (1989)." 108 Or App at 739.

So too here. There is no logical connection between the complainant's supposed history of having offered to trade sex for drugs and any motive to accuse this defendant in this case. OEC 412(2)(b)(A) is inapposite.[4]

■      OEC 412(2)(b)(C) permits the admission of non-reputation, non-opinion evidence of a complainant's past sexual behavior when such evidence is "constitutionally required to be admitted." The scope of this confrontation and due-process "catch-all" provision is largely undefined:

> "This general exception is intended to cover those infrequent instances where, because of an unusual chain of circumstances, following the general rule of inadmissibility would deny the defendant a constitutional right." Legislative Commentary to Rule 412, *reprinted in* Kirkpatrick, *Oregon Evidence* at 202.

However, as a logical matter, subsection (C) encompasses more evidence than that admissible under subsection (A);[5] otherwise subsection (C) would be unnecessary and superfluous.

Defendant advances three theories for why the "sex for drugs" testimony was constitutionally required to be

---

[4] *Accord State v. Bass*, 69 Or App 166, 683 P2d 1040, *rev den* 298 Or 238 (1984) (the complainant's pecuniary sexual relationship with another man was relevant to her motive to falsely accuse the defendant because the defendant had threatened to interfere with that relationship; however, the parties' particular sexual conduct was not relevant).

[5] Subsection (C) almost certainly encompasses evidence relating to the motive or bias of the complainant that is admissible under subsection (A). Kirkpatrick, *Oregon Evidence* at 205; *See State v. Jalo*, 27 Or App 845, 850, 557 P2d 1359 (1976), *rev den* 277 Or 491 (1977) (holding prior rape "shield law," *former* ORS 163.475(3), unconstitutional because it "infring[ed] upon defendant's constitutional right to confrontation as here applied to prohibit evidence of the complainant's ulterior motive for making a false charge").

admitted. We need not decide whether those rationales, discussed below, are generally cognizable as grounds for admission under OEC 412(2)(b)(C) because, even if we were to so assume, defendant's "sex for drugs" evidence did not warrant admission on any of those grounds.

Defendant first argues that admission of the "sex for drugs" evidence was constitutionally required because it was probative of his state of mind. As support for this proposition, he relies on Kirkpatrick, *Oregon Evidence* at 206-07:

"Evidence of a victim's prior sexual behavior with others may also be constitutionally required where the defendant claims reliance upon such prior behavior in assuming consent would be given."

However, as defendant fails to acknowledge, Kirkpatrick continues:

"The evidence would presumably be admissible only if the circumstances of the prior sexual activity were sufficiently similar to the circumstances of the alleged offense." *Id.*

In this case, defendant failed to show sufficient similarity. Defendant's offer of proof merely stated "that the victim offered [two named individuals] sexual favors in return for drugs." There was no description of when, or under what circumstances, the alleged offers occurred. Nor did defendant specify when he became aware of the alleged offers—indeed, it is unclear whether defendant even knew of the offers before the alleged rape—or describe their impact on his state of mind.

Defendant's second rationale, that the "sex for drugs" evidence was relevant to prove a pattern of distinctive sexual behavior,[6] fails because that evidence was insufficient under OEC 406. OEC 406 provides:

"(1) Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a

---

[6] Defendant argues:

"The evidence was also relevant to prove a pattern. [The complainant] over time has a pattern of trading sex for drugs making it more likely that she traded sex for defendant's drugs, as is her particular practice or pattern."

particular occasion was in conformity with the habit or routine practice.

"(2)   As used in this section, 'habit' means a person's regular practice of meeting a particular kind of situation with a specific, distinctive type of conduct."

Here, the only evidence of "habit" was that the complainant previously had offered to exchange sex for drugs under unspecified circumstances on two undated occasions. Whatever the scope of OEC 412(2)(b)(C),[7] the OEC 406 predicates for the admission of "habit" evidence were not established. See *Charmley v. Lewis*, 302 Or 324, 329, 729 P2d 567 (1986).

■       Finally, defendant argues that the "sex for drugs" evidence should have been admitted for impeachment purposes. Again, we disagree. To the extent defendant sought to impugn the complainant's credibility through such evidence of "bad" conduct, that would have been improper impeachment under OEC 608(2).[8] The trial court properly excluded the "sex for drugs" testimony.

■       Defendant next assigns error to the trial court's exclusion of evidence that the complainant's boyfriend abused her. In particular, defendant offered investigative reports of six witnesses asserting that (1) the complainant's boyfriend abused her when he suspected she had been using drugs, or (2) that she feared abuse.[9] Defendant argued that

---

[7] We note that, as a general matter, OEC 412 strongly disfavors such "propensity" evidence. See *State v. Niles*, *supra*, 108 Or App at 738 n 2.

[8] OEC 608(2) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness * * * may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

[9] The investigative reports included the following comments:

"[Witness #1] said that [complainant's boyfriend] * * * used to come into the Anchor Inn looking for [complainant], and that [complainant] would have been out with other guys doing cocaine, and [boyfriend] would be very mad about this. [Witness #1] said that the next day [complainant] would show up with bruises after [boyfriend] had beat her up."

"[Witness #2] said that [complainant] used to go upstairs to the apartments above the Anchor Inn. There were two people * * * who lived up there. [Witness #2] said that [they] were drug dealers and that [complainant] used to go up there and shoot dope with them. [Witness #2] said on one occasion [complainant] came back downstairs and told [her], '**Don't tell [boyfriend] I went upstairs.**

this evidence was probative of the complainant's motive to fabricate the rape story—*i.e.*, that she did so to explain her overnight absence, covering up her drug use, in order to avoid abuse. In response to defendant's *in limine* offer of proof, the complainant testified that she had not been abused. The court excluded the evidence:

> "Now, the domestic violence issue is something that I'm really wrestling with from the standpoint that [the complainant] says her boyfriend has never ever struck her. Now, if I allowed in the testimony as I would cited through the [investigative reports] is this really a collateral point? That's what it's coming up as * * *. You would be impeaching her on a collateral point whether her boyfriend has previously beaten her. Now, I realize that's the main thrust of what your theory is. But as I read those reports not one of them said they saw a boyfriend beat her up. So, you're going to have to try and impeach [the complainant] with essentially hearsay because no one saw an incident between herself and [her boyfriend].
>
> "* * * * *
>
> "I'll sure hate it if this thing comes back. I'm going to exclude it. I'm going to keep it out."

As with the "sex for drugs" evidence, the state first argues that defendant's offer of proof was inadequate in that it "fails to establish the victim was beaten at all." We disagree. Defendant offered the court investigative reports with statements from a variety of witnesses supporting his claim that the complainant was abused by, and feared, her boyfriend. Notwithstanding the complainant's denial that she had been abused, that evidence was sufficient to support an inference that the complainant feared abuse by her boyfriend. The state also argues that defendant's offer of proof "fails to make any necessary links as predicate to arguable relevance." At the *in camera* hearing defense counsel explained the relevance of the evidence of abuse:

> "The rationale is she's got the motive to make up a story because she has fear of [her boyfriend]. And she's told people

---

If [boyfriend] finds out I'm doing drugs he'll beat the shit out of me again.' " (Boldface in original.)

"[Witness #6] said that [complainant] made [rape] story up because she was out with [defendant] doing her drugs and she was afraid her boyfriend * * * would beat her up."

that she has a fear of him when she goes out and stays out late or sneaks out of the house."

The offer of proof was adequate for our review.

We turn to the merits of the evidentiary ruling. The trial court excluded the evidence of abuse as impermissible impeachment on a collateral matter. Although a trial court's exclusion of arguably collateral evidence is generally entitled to considerable deference, *see Flande v. Brazel*, 236 Or 156, 160, 386 P2d 920 (1963), we conclude that the court in this instance erred because the evidence was not offered for impeachment purposes, much less on a collateral matter.

The defense rested on two theories: (1) the complainant consented to the sexual encounter in exchange for drugs; and (2) she fabricated the rape story to avoid physical abuse from her boyfriend. The proffered evidence went directly to the complainant's motivation to fabricate. That evidence was not collateral, but central to the defense. Accordingly the trial court erred in excluding it on that ground. *State v. Johnson*, 277 Or 45, 48, 559 P2d 496 (1977); *John N. Sheagren, M.D., P.C. v. Albrecht*, 123 Or App 553, 556, 860 P2d 868 (1993) (extrinsic evidence that is independently admissible for a reason other than to contradict the testimony of the witness is not collateral).

■ The state argues that even if the evidence was not collateral, it could properly have been excluded as cumulative. In particular, the state notes that defendant was permitted to testify that the complainant's boyfriend threatened to assault him, and that this sufficiently established the boyfriend's violent propensities. We disagree. Evidence that the boyfriend threatened violence against defendant was hardly cumulative of evidence of his conduct towards the complainant.

■ We conclude, however, that the evidentiary error was harmless because, viewing the entire record, there is "little likelihood that the error affected the verdict." *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988); *accord* OEC 103(1).[10] Perhaps the most damning evidence of defendant's

---

[10] OEC 103(1) provides, in part:

"Evidential error is not presumed to be prejudicial. Error may not be

guilt was medical and scientific evidence pertaining to duct tape. As noted previously, the complainant testified that defendant had bound her wrists and mouth with duct tape before assaulting her. Defendant testified that the sexual acts were entirely consensual and that he did not bind the complainant with duct tape. However, at trial the state introduced two rolls of duct tape and some wadded-up duct tape recovered from defendant's basement, where the alleged rape occurred. On the wadded-up duct tape were hairs, which were determined to be "microscopically similar" to the complainant's. Moreover, the state introduced photographs of the complainant taken at the hospital the morning after the alleged rape, which show cuts and a scratch line across the complainant's mouth and "red striations" across her wrists. The police officer who interviewed the complainant at that time observed those marks and testified that they were consistent with being bound. The emergency room physician who treated the complainant that morning testified that the abrasions were "consistent with duct tape, [the wrists] looked like they had been bound tightly and it was a recent finding. It was not an old bruise; it was a fresh mark." Defendant offered no response or explanation other than to state, "I did not apply any tape to her."

Defendant did not preserve, and we do not address, his third assignment of error, that he was improperly sentenced.

Affirmed.

---

predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"