#27526-aff in pt & rev in pt-LSW

**2017 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

v.

JOSHUA ALLEN BAUSCH,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellee.


MARK KADI of
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2016

OPINION FILED **01/04/17**

#27526

WILBUR, Justice

[¶1.] A jury convicted Joshua Allen Bausch of four counts of rape in the first degree in violation of SDCL 22-22-1(1), and two counts of sexual contact with a child under 16 years of age in violation of SDCL 22-22-7. Bausch appeals the conviction, asserting many issues. We affirm in part, reverse in part, and remand.

## Background

[¶2.] A.L., born March 25, 2005, lived with her grandmother, Ann, in Sioux Falls, South Dakota. A.L.'s step-grandfather, Tim, and 15-year-old aunt, Angela, also lived at the residence. Rebecca, Ann's niece, visited the residence on an evening in December 2012. Rebecca brought her three children and boyfriend, Joshua Allen Bausch. Rebecca had met Bausch four months prior and was living with him.

[¶3.] While the other children slept in the living room, A.L. went to her bedroom when it was time for bed. Ann, Tim, Rebecca, and Bausch drank beer and played cards that night and retired in the early hours of the next morning. Rebecca and Bausch planned to sleep in Angela's bedroom. Sometime during the night, however, Bausch left the bedroom. Rebecca testified that she did not recall him leaving, although she stated that it was not unusual for him to do so at night. According to A.L., an individual entered her bedroom, but it was too dark for her to immediately identify the individual. She first thought it was Tim, who would sometimes apply salve to A.L.'s bottom when she forgot to do so herself. A.L. knew Tim would always wear a bandana at night because he had a lot of hair, and the individual who had entered her room did not have much hair. A.L. then recognized

-1-

the man as Bausch. Bausch removed A.L.'s shorts and underwear and placed his finger inside of her genitals. Bausch told A.L. to remain quiet, and he left after A.L. rolled away and pulled up her shorts and underwear.

[¶4.] A.L. entered the kitchen the following morning, where Ann, Tim, Rebecca, and Bausch were seated. A.L. asked Bausch why he had woken her up during the night. Bausch only shook his head in response. A.L. later described that she had felt "bad because [she] thought it was [her] imagination but then [she] just figured out he told a big lie."

[¶5.] In March 2013, A.L. attended a family get-together at the Sheraton Hotel in Sioux Falls to celebrate both Easter weekend and her cousin Jackie's birthday. Four rooms were rented to accommodate the addition of extended family. Rebecca and Bausch reserved a room for themselves, while Rebecca's children stayed in a separate room. After swimming in the hotel's pool with the other children, A.L. fell asleep while playing a game on a phone. Although Ann, Tim, Angela, and A.L. planned to leave that evening, Ann decided to let A.L. stay in Rebecca's room while the others returned home because A.L. had fallen asleep there.

[¶6.] Later, while Rebecca showered, Bausch woke A.L. while removing A.L.'s pants and underwear. He placed his finger, tongue, and penis inside her genitals. Bausch then asked A.L. if he had hurt her. When Rebecca exited the shower, Bausch had already returned to his bed. A.L. told Rebecca that she wanted to be taken to the room where the other children were. Rebecca noticed that A.L. "was crying a little bit like little kids do when they wake up in a strange place."

[¶7.]	On April 26, 2013, A.L.'s biological mother, Erica, visited Ann's house. While Erica was in the bathroom curling her hair in preparation for a family barbecue, A.L. asked her if Bausch would be at the event. Erica said that she did not think he would be and asked A.L. why A.L. wanted to know, observing that A.L. appeared nervous and scared. A.L. responded that Bausch told her not to tell. Erica persisted, and A.L. disclosed that Bausch had touched A.L.'s genitals. Erica, Ann, and Tim, as well as Erica's cousins Rosa and Jade, discussed what A.L. had said to Erica. Ann called law enforcement to report the incident.

[¶8.]	Ann took A.L. to Child's Voice the following Monday morning.[1] Dr. Nancy Free conducted a physical examination of A.L.; and Colleen Brazil, a forensic interviewer, spoke with A.L. about the incidents. According to Brazil, A.L. demonstrated the ability to recall sensory details "very well," reducing Brazil's "concern regarding suggestibility or reliability."

[¶9.]	On May 29, 2013, the State filed a complaint charging Bausch with four counts of rape in the first degree in violation of SDCL 22-22-1(1), and two counts of sexual contact with a child under 16 years of age in violation of SDCL 22-22-7. On June 19, a grand jury issued an indictment. Bausch pleaded not guilty, and a jury trial commenced on March 17, 2015. On March 20, the jury found him guilty of all counts, and the circuit court entered a judgment of conviction. For the charges related to the December 2012 incident, Bausch received a 20-year sentence for one count of rape and a 15-year sentence for sexual contact, with both sentences

---

1.	Child's Voice is a clinic run by pediatric physicians specially trained in the areas of child physical and sexual abuse.

running concurrently. For the charges related to the March 2013 incident, Bausch was additionally sentenced to 20 years for each of the three remaining counts of rape and 15 years for sexual contact, all to be served concurrently. The sentences for the 2013 convictions were ordered to be served consecutively to the sentences for the 2012 convictions.

[¶10.]     Bausch appeals, asserting five issues for our review:

1.     Whether the circuit court abused its discretion in limiting cross-examination by excluding questions regarding statements A.L. made about self-harm.

2.     Whether the circuit court erred in denying a judgment of acquittal on the two sexual contact counts.

3.     Whether the circuit court's jury instructions amounted to plain error.

4.     Whether the State offered sufficient evidence to convict Bausch.

5.     Whether the circuit court imposed a cruel and unusual punishment in violation of the Eighth Amendment and abused its discretion.

**Decision**

[¶11.]     1.     *Whether the circuit court abused its discretion in limiting cross-examination to exclude statements regarding self-harm.*

[¶12.]     "'[A] trial court's evidentiary rulings are presumed to be correct.' We review evidentiary rulings for abuse of discretion." *State v. Crawford*, 2007 S.D. 20, ¶ 13, 729 N.W.2d 346, 349 (quoting *State v. Boston*, 2003 S.D. 71, ¶ 14, 665 N.W.2d 100, 105) (citations omitted). "This applies as well to rulings on motions in limine." *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12, 776 N.W.2d 58, 62. "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against,

reason and evidence." *State v. Hayes*, 2014 S.D. 72, ¶ 22, 855 N.W.2d 688, 675 (quoting *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 14, 826 N.W.2d 627, 633). "Under this standard, 'not only must error be demonstrated, but it must also be shown to be prejudicial error.'" *State v. Perovich*, 2001 S.D. 96, ¶ 11, 632 N.W.2d 12, 15-16 (quoting *State ex rel. Dep't of Transp. v. Spiry*, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263). "Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it." *State v. Hauge*, 2013 S.D. 26, ¶ 24, 829 N.W.2d 145, 152 (quoting *State v. Jucht*, 2012 S.D. 66, ¶ 47, 821 N.W.2d 629, 640).

[¶13.]     The circuit court did not abuse its discretion by denying Bausch's request to cross-examine Ann on statements made by A.L. regarding self-harm. The State filed a motion in limine on January 6, 2015, requesting that statements of self-harm made by A.L. be excluded from trial. The State argued that any such statements were not relevant, or in the alternative, that they were more prejudicial than probative. At the pretrial motions hearing, Bausch argued that statements A.L. made to Ann about self-harm were relevant to his defense, noting that the statements were made around the time the second rape occurred. The circuit court "struggle[d] with how the relevance works" and excluded the evidence. Bausch contends that the circuit court prevented him from putting forward his theory of defense (namely, that A.L. sought attention from Erica), and that the circuit court's failure to elaborate why it had found such statements not relevant precluded meaningful review on appeal. However, even if the circuit court abused its

discretion when it found the evidence not relevant, Bausch has not demonstrated prejudicial error.

[¶14.]    "All relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." SDCL 19-19-402. "Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action." SDCL 19-19-401. Evidence of a victim's past acts in a criminal case may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." SDCL 19-19-404(b). However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." SDCL 19-19-403.

[¶15.]    Bausch cites *State v. Huber*, 2010 S.D. 63, 789 N.W.2d 283, claiming that his right to present the theory of his defense was undermined by the circuit court's ruling. *Huber* involved a defendant convicted of shooting his wife. The State argued that Huber, who was a former chief of police, was too well-trained with firearms for the shooting to have been an accident. Huber wished to present an expert witness who would testify that even well-trained officers may unintentionally discharge their firearms under four different factual scenarios. The circuit court ruled that Huber's expert was qualified and his testimony reliable. But the court also held that such testimony would not be relevant unless Huber presented other evidence of the presence of one of those four causes. On appeal, this

#27526

Court reiterated the proposition that "[w]hen a defendant's theory 'is supported by law and . . . has some foundation in the evidence, *however tenuous*,' the defendant has a right to present it." *Id.* ¶ 35, 789 N.W.2d at 294 (quoting *State v. Packed*, 2007 S.D. 75, ¶ 25, 736 N.W.2d 851, 859). But in *Huber*, we noted that without his expert, Huber had no witness to rebut the State's evidence regarding its well-trained officer theory. Huber's inability to respond to the State's "numerous witnesses" "effectively deprived [him] of a fundamental constitutional right to a fair opportunity to present a defense." *Id.* ¶ 37 (quoting *Packed*, 2007 S.D. 75, ¶ 25, 736 N.W.2d at 859).

[¶16.] As the State contends here, however, Bausch had numerous opportunities to present the theory of his defense. "The Confrontation Clause does not guarantee effective cross-examination, but guarantees the opportunity to confront the witness. . . . Therefore, our inquiry is whether [the defendant] was denied an *opportunity* for effective cross-examination." *Perovich*, 2001 S.D. 96, ¶ 15, 632 N.W.2d at 16.

[¶17.] During cross-examination of A.L., the defense asked A.L. if she was "happier now that your mom's in Sioux Falls," and noted the presence of A.L.'s "friends" in the courtroom. Bausch also cross-examined Ann about not having time for A.L. and how Erica visited infrequently. Erica herself was subject to cross-examination. Dr. Nancy Free, a pediatrician, testified under cross-examination that Ann had spoken about A.L. needing more attention and that Free had previously indicated that A.L. was "involved in a very complex social situation[.]" At closing argument, the defense reiterated that A.L. was "born into a very complex

-7-

social situation" and stated that while "Ann . . . is not neglecting [A.L.] . . . it's very clear that the attention that [A.L.] was seeking to get by making these allegations was that of her mother Erica."

[¶18.]     While A.L.'s statements about self-harm may have strengthened Bausch's defense, his inability to use the statements to cross-examine Ann did not preclude Bausch from either presenting his defense theory or responding to the State's case. Defense counsel even admitted at the motions hearing that the motion in limine would not "completely shut down [Bausch's] defense."

[¶19.]     Nevertheless, Bausch argues that because the evidence was relevant, it should have been admitted. However, the cases he cites in support of his claim are similarly distinguishable. For example, the court in *Alexander v. State*, 749 So. 2d 1031, 1037 (Miss. 1999) noted that evidence of a previous civil action "was the *only* evidence supporting [defendant's] theory of defense." (Emphasis added.) Bausch, as discussed above, had multiple other avenues by which he could establish his defense.

[¶20.]     In *State v. Johnson*, 516 N.W.2d 463, 468 (Wis. Ct. App. 1994), "other witnesses testified," but the "case essentially turned on the jury's assessment of the credibility issue drawn between" the victim and the defendant. The court there held that evidence "concerning [the victim's] attempt to obtain [the defendant's] property following her accusations and his resulting incarceration" should have been allowed pursuant to his theory that the victim "falsely accused him of assault so that after he was incarcerated she could misappropriate . . . his personal property." *Id.* at 467. The court stated that the defendant's "proffered evidence, *if*

*believed*, offered a plausible scenario as to why [the victim] might have falsely accused him," *id.* at 468, suggesting that such a theory was doubtful without it. Bausch, however, elicited testimony from multiple witnesses through cross-examination suggesting that A.L. needed more attention.

[¶21.] In *State v. Thompson*, 884 P.2d 574, 579 (Or. Ct. App. 1994), the defendant wished to introduce testimony that the victim's boyfriend abused her, which would support his theory that she had fabricated the account of rape "to explain her overnight absence, cover[] up her drug use, [and] in order to avoid abuse." As the court there observed, the "evidence was not collateral, but *central* to the defense." *Id.* at 579-80 (emphasis added). Moreover, the evidence was not cumulative: although the defendant testified that the victim's boyfriend "threatened to assault" the defendant, which the State argued "sufficiently established the boyfriend's violent propensities," such evidence "was hardly cumulative . . . of his conduct towards the *complainant*." *Id.* at 580 (emphasis added). Nevertheless, the court in *Thompson* held that refusal to admit the evidence was harmless "because, viewing the entire record, there is 'little likelihood that the error affected the verdict'" given the other "damning evidence of the defendant's guilt[.]" *Id.* (quoting *State v. Isom*, 761 P.2d 524, 529 (Or. 1988) (en banc)). Here, Bausch established a possible motive for A.L. to lie without A.L.'s statements about self-harm. Unlike the evidence in *Thompson*, such statements were not central to Bausch's theory of defense.

[¶22.] The United States Supreme Court examined whether a defendant should be permitted to expose a witness's potential bias by highlighting his

probationary status as a juvenile in *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Bausch reiterates the Supreme Court's proposition that "exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17, 94 S. Ct. at 1110. But in *Davis*, the failure to offer such evidence precluded the defense from meaningfully raising the defense altogether.

> While counsel was permitted to ask [the witness] whether he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . .

*Id.* at 318, 94 S. Ct. at 1111 (emphasis added).

[¶23.] As noted above, Bausch was able to establish a plausible theory to explain why A.L. might fabricate an account of rape. It was then left for the jury to decide whether to believe Bausch's theory. While Bausch states that he wished to "expos[e] . . . the depth of the alleged victim's interest to catch the attention of her mother and family," the testimony sought from Ann was not central to Bausch's defense.

[¶24.] 2. *Whether the circuit court erred in denying a judgment of acquittal on the two sexual contact counts.*

[¶25.] "We review the denial of a motion for judgment of acquittal as a question of law under the de novo standard." *State v. Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d 35, 40. "On appeal, the question before this Court is 'whether the evidence was sufficient to sustain the convictions.'" *Id.* (quoting *State v. Adamson*,

2007 S.D. 99, ¶ 17, 738 N.W.2d 919, 924) (internal quotations omitted). "We consider the evidence in the light most favorable to the verdict and will not set aside a guilty verdict on appeal 'if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt.'" *Id.* (quoting *Adamson*, 2007 S.D. 99, ¶ 17, 738 N.W.2d at 924).

[¶26.]        The conviction for sexual contact should be vacated. "A court on motion of a defendant . . . shall order the entry of judgment of acquittal of one or more offenses charged in an indictment . . . if the evidence is insufficient to sustain a conviction of the offense or offenses." SDCL 23A-23-1 (Rule 29(a)). Bausch requested a judgment of acquittal on all counts at the conclusion of the State's case, but the circuit court denied the motion. Bausch now argues that a judgment of acquittal should have been granted for both Counts 5 and 6 for sexual contact given his conviction for rape in the first degree under Counts 1 through 4.[2] Bausch contends that failure to do so resulted in his being "multiply punished for essentially the same offense," *State v. Giroux*, 2004 S.D. 24, ¶ 17, 676 N.W.2d 139, 145, in violation of the Fifth Amendment to the United States Constitution's

---

2.      SDCL 22-22-7 charges "[a]ny person, sixteen years of age or older, who knowingly engages in sexual contact with another person . . . if the other person is under the age of sixteen years" with "a Class 3 felony." SDCL 22-22-7.1 further defines "sexual contact" as "any touching, not amounting to rape, whether or not through clothing or other covering . . . of . . . the genitalia . . . of any person with the intent to arouse or gratify the sexual desire of either party." SDCL 22-22-1 defines rape as "an act of sexual penetration accomplished with any person . . . (1) [i]f the victim is less than thirteen years of age[.]"

prohibition against double jeopardy.[3] South Dakota's Constitution similarly forbids double jeopardy. S.D. Const. art. VI, § 9. "These provisions shield criminal defendants from both multiple prosecutions and multiple punishments for the same criminal offense if the Legislature did not intend to authorize multiple punishments in the same prosecution." *State v. Dillon*, 2001 S.D. 97, ¶ 13, 632 N.W.2d 37, 43.

[¶27.] Bausch did not preserve the issue on appeal by asserting that his convictions for Counts 5 and 6 amounted to double jeopardy, and "[e]ven a fundamental right may be deemed waived if it is raised for the first time on appeal." *Id.* ¶ 11. The State thus argues that this Court must undertake review only for plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23A-44-15 (Rule 52(b)). Plain error review must be "applied cautiously and only in exceptional circumstances." *State v. Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d 288, 293 (quoting *State v. Davi*, 504 N.W.2d 844, 855 (S.D. 1993)). To establish plain error, an appellant must show "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d 816, 822 (alteration in original) (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443). Additionally, "[w]ith plain error analysis, the defendant bears the burden of showing the error

---

3. "[T]wo offenses may be said to have occurred only if each statute requires proof of an additional fact which the other does not." *State v. Hoffman*, 430 N.W.2d 910, 911 (S.D. 1988) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 183, 76 L. Ed. 306, 309 (1932)).

was prejudicial." *Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d at 293 (quoting *Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d at 443).

[¶28.] The State concedes that substantial rights are involved. The State cites *State v. Brammer*, 304 N.W.2d 111 (S.D. 1981) as analogous. *Brammer* involved convictions under both South Dakota's rape and sexual contact statutes arising out of the same crime. We stated then that we did "not believe that the [L]egislature intended the sexual contact statute to apply to touching incidental to rape. The obvious intent of the [L]egislature [was] to deal with those who molest young children for sexual gratification without raping them. Sexual contact is a separate and distinct offense." *Id.* at 114. Consequently, we reversed the conviction for sexual contact and remanded to the circuit court to enter judgment of acquittal. *Id.*

[¶29.] While the State acknowledges that *Brammer* is instructive, it cautions that since the decision, "this Court has signaled a reluctance to order a judgment of acquittal." For example, in *Perovich*, we similarly found that convictions for the mutually exclusive crimes of rape and criminal pedophilia ran afoul of the double jeopardy prohibition of the Fifth Amendment. Instead of remanding with an instruction to order a judgment of acquittal, we vacated the convictions for rape and remanded for resentencing on the criminal pedophilia convictions. *Perovich*, 2001 S.D. 96, ¶ 40, 632 N.W.2d at 20; *see also Wilcox v. Leapley*, 488 N.W.2d 654, 656-57 (S.D. 1992) (remanding with direction to vacate sentence for first-degree manslaughter when defendant was also convicted of second-degree murder). Here, Bausch's sexual contact convictions arise from sexual contact incidental to the

rapes.  Given that we have said a sexual contact charge is mutually exclusive to a rape charge, it cannot be that Bausch's convictions of Counts 5 and 6 "were supported by *law* and fact."  *See Wilcox*, 488 N.W.2d at 657 (emphasis added).  The sexual contact convictions should therefore be vacated and the matter should be remanded for resentencing.

[¶30.]       3.       *Whether the circuit court's jury instructions amounted to plain error.*

[¶31.]       Bausch contends next that the court's instructions were inadequate, claiming that they incorrectly stated the law regarding sexual contact (namely, that the jury instruction failed to define sexual contact as a touching not amounting to rape).  Bausch concedes that his failure to preserve the issue on appeal by raising an objection at trial requires plain error analysis.  Given that we ordered that the circuit court vacate the sexual contact convictions, we need not analyze this issue.

[¶32.]       4.       *Whether the State offered sufficient evidence to convict Bausch.*

[¶33.]       "A court on motion of a defendant . . . shall order the entry of judgment of acquittal of one or more offenses charged in an indictment or information after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of the offense or offenses."  SDCL 23A-23-1 (Rule 29(a)).  We have said:

> In determining the sufficiency of the evidence on review, the question presented is whether there is evidence in the record which . . . is sufficient to sustain a finding of guilt beyond a reasonable doubt.  In this review, we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict.  In determining the sufficiency of the evidence, this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.  No guilty verdict will be set aside if the evidence, including

circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt.

*State v. Bucholz*, 1999 S.D. 110, ¶ 33, 598 N.W.2d 899, 905 (quoting *State v. Knecht*, 1997 S.D. 53, ¶ 22, 563 N.W.2d 413, 421).

[¶34.] The State offered evidence sufficient to sustain a conviction for rape, and Bausch was not entitled to a judgment of acquittal. In addition to SDCL 23A-23-1 (Rule 29(a)), Bausch cites *Atkins v. Stratmeyer*, where we said that a "jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law." 1999 S.D. 131, ¶ 7, 600 N.W.2d 891, 894 (quoting *LDL Cattle Co. v. Guetter*, 1996 S.D. 22, ¶ 13, 544 N.W.2d 523, 526-27). We further said, however, that the "trial court is best able to judge whether a verdict is the product of passion and prejudice, and the Supreme Court will not disturb its decision except for clear abuse." *Id.* ¶ 7, 600 N.W.2d at 894-95 (quoting *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D. 1985)). We review denial of a motion for judgment of acquittal de novo.*State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83. [¶34.] Bausch claims that an "irreconcilable conflict with physical evidence" exists here due to the lack of physical evidence in the first place. However, physical evidence is not necessary to sustain a conviction for rape. *See Perovich*, 2001 S.D. 96, ¶ 28, 632 N.W.2d at 18. Here, as in *Perovich*, "[t]he question of guilt was to be resolved by a jury based on the testimony." *Id.* Bausch argues that what testimony was provided confirms "a lack of opportunity for anyone to commit the charged offenses," and he cites the fact that "numerous potential witnesses were present regarding these alleged instances" and

that "[a]ll of them heard and saw nothing." Bausch also claims that "[i]t is inconceivable" for Bausch to have committed rape in the timeframe that Rebecca was in the shower. As outlined above, however, this Court is not in a position to evaluate the credibility of witness testimony. The jury was free to disbelieve A.L. or any of the other witnesses who testified at trial. A rational trier of fact could have relied upon such testimony in arriving at its conclusion of Bausch's guilt.

[¶35.] Bausch also points to inconsistencies in A.L.'s account, such as who put her to bed on the foldout couch at the hotel. But these internal contradictions do not amount to the kinds of serious inconsistencies that raise concerns about whether a rational trier of fact could find guilt beyond a reasonable doubt. Any such conflicts in the testimony are to be resolved by the jury. Bucholz, 1999 S.D. 110, ¶ 33, 598 N.W.2d at 905; *see also State v. Svihl*, 490 N.W.2d 269, 274 (S.D. 1992). And we have declined to say that much more problematic inconsistencies cast doubt upon a verdict. *See, e.g., State v. Deal*, 2015 S.D. 51, ¶ 22, 866 N.W.2d 141, 148 (noting account of escape by the victim which included locking a sliding door that lacked a locking mechanism did not render evidence insufficient to support a verdict of guilt). As such, the evidence viewed in the light most favorable to the verdict was sufficient to support a rational theory of guilt.

[¶36.]      5.     *Whether the circuit court imposed a cruel and unusual punishment in violation of the Eighth Amendment and abused its discretion in sentencing Bausch.*

[¶37.] Bausch argues that his sentence constitutes cruel and unusual punishment proscribed by both the Eighth Amendment to the United States Constitution and the South Dakota State Constitution, citing *State v. Bonner*,

1998 S.D. 30, 577 N.W.2d 575, 579 (1998).  This Court clarified our Eighth Amendment jurisprudence in *State v. Rice*, 2016 S.D. 18, 877 N.W.2d 75.  *See also State v. Chipps*, 2016 S.D. 8, 874 N.W.2d 475.  In *Rice*, we stated, "[t]he question whether a noncapital sentence violates the Eighth Amendment requires us to determine de novo whether the sentence imposed is grossly disproportionate to its corresponding offense."  *Id.* ¶ 13, 877 N.W.2d at 80.  "To do so, we first compare the gravity of the offense—i.e., 'the offense's relative position on the spectrum of all criminality'—to the harshness of the penalty—i.e., 'the penalty's relative position on the spectrum of all permitted punishments.'"  *Id.* (quoting *Chipps*, 2016 S.D. 8, ¶¶ 35-38, 874 N.W.2d at 489).  Only "[i]f the penalty imposed appears to be grossly disproportionate to the gravity of the offense" will we then "compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'"  *Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 489 (quoting *Solem v. Helm*, 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d. 637).

[¶38.]      While Bausch cites *Bonner* in stating that "[t]he conduct involved, and any relevant past conduct must be considered," our analysis per *Rice* and *Chipps* does not take an individualized approach to sentencing.  We look only to whether the penalty imposed is grossly disproportionate to the gravity of the offense.  A sentence of 20 years for each count of rape in the first degree—one of the gravest crimes on the spectrum of criminality—does not appear grossly disproportionate.  Thus, although Bausch highlights, for example, the fact that his "record is devoid of drug or alcohol issues" and that he has "demonstrated a significant work history,"

these facts are not relevant to our Eighth Amendment analysis. As to the constitutional question presented by Bausch, we hold that the sentence was not cruel and unusual.

[¶39.] Bausch contends that our decision in *Rice*, however, left open the opportunity for a *Bonner* style analysis when a defendant asserts that a court abused its discretion. Arguments that bear on the question whether the sentencing court acted within its discretion will be reviewed under the abuse-of-discretion standard." *Rice,* 2006 S.D. 18, ¶ 29 n.8, 877 N.W.2d at 85. "Within constitutional *and* statutory limits, the trial courts of this state exercise broad discretion when deciding the extent and kind of punishment to be imposed." *Id.* ¶ 23, 877 N.W.2d at 83 (quoting *State v. Grosh*, 387 N.W.2d 503, 508 (S.D. 1986)).

[¶40.] Bausch concedes that his "sentence . . . is within each statutory maximum penalty," but contends that it is "erroneously harsh in light of [his] background." However, "a sentence within the statutory maximum generally will not be disturbed on appeal." *Id.* (quoting *State v. Bruce*, 2011 S.D. 14, ¶ 28, 796 N.W.2d 397, 406). Like the defendant in *Rice*, Bausch cites a number of factors, such as his limited criminal history, which he argues would warrant a lesser sentence. Here, while the circuit court did not elaborate on Bausch's ability to be rehabilitated or cite the need for deterrence, it did order a psychosexual report be submitted prior to sentencing and listened to statements made by Bausch's family. Additionally, "the sentence itself reflects that the sentencing court had these factors in mind." *Id.* ¶ 28, 877 N.W.2d at 85. Rather than impose the equivalent of a life sentence, which was requested by the State, "the court imposed a sentence of

substantially less time." *See id.* "By imposing a term of years, the court preserved the possibility of future parole," *id.*, for which the circuit court acknowledged that Bausch would be eligible. The circuit court, therefore, did not abuse its discretion at sentencing.

[¶41.]    Affirmed in part, reversed in part, and remanded.

[¶42.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.